

The following constitutes
the order of the court. Signed July 15, 2015

_Charles Novack_
Charles Novack
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br>SATYA DEVI JAGAR,<br>　　　　Debtor. | Case No. 13-46850 CN<br>Chapter 7 |
| EUGENE SCHNEIDER,<br>　　　　Plaintiff,<br>vs.<br>SATYA DEVI JAGAR,<br>　　　　Defendant. | Adversary No. 14-04037 CN<br><br>MEMORANDUM ORDER GRANTING DEFENDANT'S MOTION UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 7052(c) |

　　　　On July 7, 2015, this court conducted the first day of a timed trial in this adversary proceeding.  Eugene Schneider, a practicing attorney since 1969, represented himself as the plaintiff, and the defendant, Satya Jagar ("defendant" or "Jagar"), is represented by Raymond Miller. Schneider called three witnesses and completed his case in chief during the first day of trial. When he rested, Jagar moved for court for a "directed verdict."  This court construes this as a request for judgment under FRCP 52(c), which is incorporated into Federal Rule of Bankruptcy Procedure 7052. Rule 52(c) provides that "If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable

MEMORANDUM ORDER
1

finding on that issue. The court may, however, decline to render any judgment until the close of the evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law."

A motion for judgment under Rule 52(c) differs substantially from a directed verdict. A Rule 52(c) motion allows this court to "weigh the evidence, resolve any conflicts in it, and decide for itself where the preponderance lies." [citations omitted.] *In re Kids Creek Partners, L.P.*, 212 B.R. 898, 926 (Bankr. N.D.Ill. 1997). In contrast, the court may not weigh evidence in a motion for a directed verdict, which is only available in a jury trial. "Rather, the court must draw all factual inferences in favor of the nonmoving party." *Ibid*.

When considering a Rule 52(c) motion, this court "must take an unbiased view of all of the evidence, direct and circumstantial, and accord it such weight as the court believes it is entitled to receive. Unlike with a motion for direct verdict, the court makes no special inferences in the plaintiff's favor nor concerns itself with whether the plaintiff has made out a *prima facie* case. Instead, the court is to weigh the evidence, resolve any conflicts in it, and decide for itself where the preponderance lies." [citations omitted.] *Id*. at 898.

The following constitutes this court's findings of fact and conclusions of law.

Schneider has alleged claims for relief under Bankruptcy Code § 523(a)(2)(A) and 727. The court will first address the 523(a)(2)(A) claim for relief. In April 2005, Schneider began representing Jagar in her deceased husband's probate that was pending in Alameda County Superior Court. Jagar married her husband, Pyara Jagar, in India, and they both then moved to the United States. Pyara Jagar had a substantial 401(k) with his employer, and other assets, and his sons from a prior marriage contested the validity of the defendant's marriage with their father. The defendant retained Schneider to represent her in the probate proceeding. The first retention agreement, dated April 25, 2005 (the "2005 Representation Agreement"), indicates that Schneider was to attempt to have her appointed as the personal representative of the estate. If he accomplished this, the Alameda County Superior Court would determine Schneider's fees. If the defendant was not appointed as the personal representative, the 2005 Representation Agreement states that Schneider would bill his time at $300/hour. It appears that the defendant signed this agreement.

2

It is important to note that the defendant is not well educated, has never worked, does not speak or read English, and that her native language is Punjabi. The 2005 Representation Agreement, like the other representation agreements admitted into evidence, are all in English, were not translated into written Punjabi for defendant, and Jagar did not sign them in Schneider's presence.

The parties signed their second representation agreement in February 2007. The second agreement, in the form of a letter dated February 23, 2007 (the "2007 Representation Agreement"), indicates that the probate proceeding and the dispute regarding her status as Pyara Jagar's wife was unresolved and proceeding to trial in March 2007. Not only was Schneider litigating this matter in Probate Court, but he was also trying to convince her late husband's employer's retirement plan to recognize the defendant as Pyara Jagar's wife, and release his substantial 401k to her. The 2007 Representation Agreement also indicates that the defendant was facing immigration issues and possible deportation. Schneider apparently prepared this second letter because (as his letter states):

> "our agreement required that I be paid on a monthly basis. I was told you are unable to pay me and my compensation must come out of whatever you receive as a result of the litigation. This is a change in our agreement. I am prepared to accept this change in our contract and to continue representing you so long as the agreement is changed follows:
> I will be paid my hourly rate. In addition I will receive 7 ½% of the value of what you receive from any sources as a result of being established as Pyara's widow. In this context the term "any sources' refers to the estate and any retirement plans Pyara had. Upon a final distribution order being entered in the estate all sums will become due and will be subject to a one and one-half percent monthly service charge until paid. . .
> If you are in agreement, I ask that you sign the enclosed copy of this letter and return it to me. Also, as I anticipate someone will be translating or explaining this to you, I ask that person to also sign."

The 2007 Representation Agreement was apparently signed by the defendant and her brother, who signed as the "Translator." Jagar did not sign the 2007 Representation Agreement in Schneider's presence.

Defendant believes that this letter limited Schneider's payment to 7.5% of her recovery. While her belief is inconsistent with the 2007 Representation Agreement's express terms, Schneider has not demonstrated by a preponderance of the evidence that the 2007 Representation Agreement was fully or accurately translated to her. Jagar's brother did assist her in some unspecified ways in the probate proceeding, and apparently did translate some documents for her. This court is not persuaded, however, that his command of the English language was sufficient to avoid Jagar's

3

apparent confusion or misunderstanding regarding the terms of Schneider's compensation. The defendant believed that her brother understood only a little English. While another family member, Deep Raj, a sister-in-law, testified that she believed that Jagar's brother spoke and read English, her testimony, while sincere, indicated that she did not know the full extent of his knowledge of English. Significantly, she did not testify about the brother's translation of the 2007 Representation Agreement.

The parties' final representation agreement also came in the form of a letter dated July 14, 2009 (the "2009 Representation Agreement"). The 2009 Representation Agreement addressed Schneider's representation of Jagar in District Court litigation which he commenced against the administrator of her late husband's retirement plan to compel its turnover of his retirement funds to her. While it appears that the defendant signed and returned the 2009 Representation Agreement, Schneider did not request that any person translate and sign it.

Neither Schneider nor the defendant testified regarding the events or the outcome of the Alameda County or District Court litigation. Instead, Schneider submitted several documents filed in or issued by Alameda County Superior Court indicating that the parties resolved some part of their probate dispute, and that some funds were to be disbursed to the defendant as a result. Schneider testified that while he has received some of the fees owed him, he is still owed substantial funds under the 2007 and 2009 Representation Agreements. Schneider completely failed to provide this court with any calculation of these fees, which represent his allegedly, non-dischargeable claim. The only evidence in this regard is the Alameda County Superior Court complaint that he filed against the defendant to collect these funds. His Alameda County complaint, which is a check-the-box California Judicial Counsel form, nakedly states that his is owed $108,010.06 for services rendered, and an additional $91,989.94 on account of the fraud committed by defendants. The court has little idea how he reached these numbers, and therefore cannot find that these represent his damages.

Schneider contends that defendant defrauded him when she signed the 2007 and 2009 Representation Agreements, as she did not intend to pay him his hourly rate and 7.5% contingency fee on the recovered funds. He also asserts that after signing the 2007 and 2009 Representation Agreements, she remained silent on her understanding regarding his compensation under these

4

MEMORANDUM ORDER
Case: 14-04037   Doc# 79   Filed: 07/15/15   Entered: 07/15/15 16:21:04   Page 4 of 11

documents, and thus is also liable for "false pretenses." Bankruptcy Code § 523(a)(2)(A) provides that "A discharge . . . does not discharge an individual debtor from any debt . . . (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by - (A) false pretenses, a false representation, or actual fraud[.]" Non-dischargeability claims for relief should be construed narrowly in favor of dischargeability. *See In re Hudson*, 107 F.3d 355 (5th Cir. 1997). A creditor must establish five elements by a preponderance of the evidence to prevail on a § 523(a)(2)(A) claim: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of the statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct. *Turtle Rock Meadows Homeowners Assen v. Slyman (In re Slyman),* 234 F.3d 1081, 1085 (9th Cir. 2000). A §523(a)(2)(A) claim may also arise from the concealment or intentional non-disclosure of material facts. *In re Evans*, 181 B.R. 508, 515 n.6 (Bankr.S.D. Cal.1995). A debtor's knowledge and intent to deceive may be inferred by circumstantial evidence and from the debtor's conduct. *Edelson v. CIR*, 829 F.2d 828, 832 (9th Cir. 1987); *Donaldson v. Hayes (In re Ortenzo Hayes)*, 315 B.R. 579, 587 (Bankr. C.D. Cal. 2004). A § 523(a)(2)(A) claim requires that the "target misrepresentation must have existed at the inception of the debt, and a creditor must prove that he or she relied on that misrepresentation." *Reingold v. Shaffer (In re Reingold)*, 2013 WL 1136546, at *5 (9th Cir. B.A.P. Mar 19, 2013); *see also, New Falls Corp. v. Boyajian (In re Boyajian),* 367 B.R. 138, 147 (9th Cir. B.A.P. 2007) (*citing Bombardier Capital, Inc. v. Dobek (In re Dobek)*, 278 B.R. 496, 508 (Bankr. N.D. Ill.2002)). Schneider must prove his non-dischargeability claim for relief by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

Schneider has not met this burden of proof on his fraud claim. First, given the defendant's lack of education and illiteracy in English, and the insufficient evidence regarding the strength of her brother's command of the English language, Schneider has not demonstrated that Jagar fully understood the terms of the 2007 and 2009 Representation Agreements and knowingly lured Schneider into representing her, all along not intending to fully pay the fees due him. In addition, since the funds apparently disbursed by Duane Leonard (the probate estate's administrator), were

5

sent to the defendant, care of Schneider, Schneider has not demonstrated by a preponderance of the evidence how the defendant was able to avoid Schneider's collection efforts. Finally, even if Schneider had demonstrated the intent necessary to establish a § 523(a)(2)(A) claim, he did not introduce sufficient evidence for this court to determine the amount of his non-dischargeable claim. Accordingly, the defendant's motion under Rule 7052(c) regarding the §523(a)(2)(A) fraud claim for relief is granted, and judgment is entered in the defendant's favor.

The same analysis applies to Schneider's assertion that Jagar's conduct constituted false pretenses. A false pretense "involves an implied misrepresentation or conduct intended to create or foster a false impression. A false pretense has been defined to include a "mute charade," where the debtor's conduct is designed to convey an impression without oral representation. . . . A debtor's silence may constitute a materially false misrepresentation prohibiting discharge of the indebtedness." [citations omitted.] *In re Begun*, 136 B.R. 490, 495 (Bankr. S.D. Ohio 1992). Regardless of whether the misrepresentation is express (fraud) or implied (false pretenses), Schneider must prove that Jagar intended to defraud him. "[U]nder Ninth Circuit law, the terms "false pretenses" and "false representation" have the same meaning in § 523(a)(2)(A) as the term "actual fraud." In consequence, they cannot provide a basis, independent of actual fraud, for finding a debt nondischargeable." *Mandalay Resort Group v. Miller (In re Miller)*, 310 B.R. 185, 201 (Bankr. C.D. Cal. 2004).[1] For the reasons stated above, Schneider did not meet his scienter burden of proof.[2]

The court now addresses Schneider's claims to deny the defendant her Chapter 7 discharge. Schneider asserts two claims for relief under Bankruptcy Code § 727. Schneider first asserts that under § 727(a)(4)(A), defendant knowingly and fraudulently made a false oath and account by failing to list several items of information on her bankruptcy schedules and statement of financial affairs.

---

[1] The United States Supreme Court's analysis in *Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754 (2013) probably also alerts us to the need for scienter under all non-dischargeable grounds in § 523(a)(2)(A).

[2] Schneider also did not demonstrate the amount of his damages arising from Jagar's alleged misconduct.

6

Case: 14-04037   Doc# 79   Filed: 07/15/15   Entered: 07/15/15 16:21:04   Page 6 of 11

Bankruptcy Code § 727(a)(4)(A) provides in pertinent part that "The court shall grant the debtor a discharge unless . . . the debtor knowingly and fraudulently, in or in connection with the case –(A) made a false oath or account. . . ." This court may deny a Chapter 7 debtor's discharge if (1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) this oath was made knowingly; and (4) the oath was made fraudulently. Plaintiffs must establish these elements by a preponderance of the evidence. *In re Retz*, 606 F.3d 1189, 1197 (9th Cir. 2010) (*citing Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (9th Cir. B.A.P. 2005)); *In re Coombs*, 193 B.R. 557, 560 (Bankr. S.D. Cal. 1996) *(citing In re Bodenstein*, 168 B.R. 23, 27 (Bankr. E.D.N.Y.1994)).

A false oath may involve an affirmatively false statement or an omission from a debtor's bankruptcy schedules or statement of financial affairs. *Searle v. Riley (In re Searle)*, 317 B.R. 368, 377 (9th Cir. B.A.P. 2004) (citations omitted), *aff'd*, 212 Fed.Appx. 589 (9th Cir. 2006). A material fact is one that "bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of of the debtor's property." *In re Khalil*, 379 B.R. 163, 173 (9th Cir. BAP 2007). Notwithstanding this broad definition, a "false statement or omission that has no impact on the bankruptcy case is not material and does not provide grounds for relief for denial of a discharge under § 727(a)(4). *Id*. at 172. An act is done "knowingly" when the debtor acts "deliberately or consciously." *Id* at 173. Finally, a fraudulent oath or omission is made fraudulently when the (1) debtor makes a misrepresentation or an omission; (2) that at the time he or she knew was false; and (3) with the intention and purpose of deceiving creditors. *Id*. Courts typically rely on circumstantial evidence to demonstrate this intent. *In re Devers*, 759 F.2d 751, 753-54 (9th Cir. 1985). Recklessness alone does not establish a debtor's fraudulent intent. It can, however, form a part of the circumstantial evidence typically used to establish fraudulent intent. *Khalil*, 379 B.R. at 173.

Schneider alleges that defendant's following miscues fall under section 727(a)(4):

    1.    *Defendant did not disclose that she received $600 in rental income in 2013 when she rented out some space in her residence, and that she should have listed this income on her Statement of Financial Affairs*: Jagar explained that she was forced to retain an attorney at a

7

cost of $1500 to evict these tenants, and she did not believe that this loss constituted income. While the Statement of Financial Affairs requires a debtor to report gross income (and thus Jagar should have listed this rental income), Schneider has not demonstrated by a preponderance of the evidence that she intended to deceive anyone by this small omission.

2. *The Statement of Financial Affairs mistakenly states that her husband's probate proceeding closed in 2007*: While no one testified exactly when the probate closed, there is no evidence that this mistake was fraudulently made or deceived anyone.

3. *Jagar did not list any gasoline or bus travel expenses on her original Schedule J. Debtor later amended her schedule J to list this as a $200 monthly expense:* Again, there is no evidence that this error was made fraudulently with an intent to deceive creditors or was a material fact in any regard.

4. *Jagar did not list her daughter's $1700 monthly social security payment on her original Schedule I or on the Statement of Financial Affairs:* The debtor amended her Schedule I to include this amount. Again, Schneider did not demonstrate by a preponderance of the evidence that this initial omission was done with any fraudulent intent.

5. *Jagar did not list her ADT, ATT or Comcast bill on her Schedule F:* While the debtor certainly contracted with these companies at some point, Schneider did not demonstrate by a preponderance of the evidence that she was behind on these bills when she filed her Chapter 7 (which could excuse her failure to list these companies) or that this omission was fraudulent or done to deceive creditors.

6. *Jagar did not take her pre-bankruptcy credit counseling course. The only evidence offered in this regard was Jagar's testimony that she did not recall or know anything about this course:* The court takes judicial notice that its bankruptcy docket contains a certificate indicating that Jagar took the course. The court attributes her limited testimony on this issue to her limited education and highly emotional state during her time on the witness stand.

Accordingly, defendant's motion is granted as to the § 727(a)(4) claim for relief.

Finally, Schneider asserts that this court should deny defendant's discharge under Bankruptcy Code § 727(a)(5), which provides that a debtor should not receive a discharge if "the debtor has

8

**MEMORANDUM ORDER**
Case: 14-04037   Doc# 79   Filed: 07/15/15   Entered: 07/15/15 16:21:04   Page 8 of 11

failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss or assets or deficiency of assets to meet the debtor's liabilities." To prevail on this claim, Schneider, must, by a preponderance of the evidence, demonstrate as a threshold issue that the debtor "at some point in time, not too remote from the bankruptcy petition date, owned identifiable assets" and that "on the date the bankruptcy petition was filed or order of relief granted, the debtor no longer owned the assets." *In re Devers*, 759 F.2d 751, 754 (9th Cir. 1985).

What assets are at issue here? No witness testified on this issue. Instead, the only evidence before this court came in the form of various documents indicating that the defendant received certain funds from Schneider's trust account relating to the resolution of the Alameda County probate proceeding. There is no question that the debtor has accounted for the majority of the funds that she received from all of this litigation - her interest in her deceased husband's 401k - since this is listed as an exempt asset on her Schedules B and C (now in the form of a rollover IRA). Other than these funds, the only funds disclosed by the documents admitted into evidence were the following funds that the debtor received from Schneider's trust account: a $32,784.76 check, dated April 6, 2010 (exh. G), which she deposited into her bank account on May 1, 2010.

The defendant filed her Chapter 7 on December 31, 2013, more than three and one-half years after she received these funds from Schneider. Given the fact that she has two children, owns a home, and that her only income is from Social Security, the debtor's receipt of the funds was too remote from the petition date to justify a §727(a)(5) claim for relief, and Schneider has not met his burden under this code section.

Accordingly, for the reasons stated above, Jagar's motion under F.R.B.P. 7052(c) is granted, and the July 21, 2015 continued trial date is off calendar. Jagar shall submit an appropriate judgment in her favor.

**\* \* \* END OF ORDER \* \* \***

Case No. 14-4037 CN

**COURT SERVICE LIST**

Eugene Schneider
5050 Broadway
Oakland, CA 94611

Other recipients are ECF participants